UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINE L. ARDDS,<br>CDCR No. P-59915,<br><br>                        Plaintiff,<br><br>vs.<br><br>D. HODGE; L. ROMERO; D. PARAMO;<br>P. BARAMONTE; G. VALDOVINOS;<br>RENTERIA; C. GARDINEZ; McGEE;<br>SMITH,<br>                        Defendants. | Case No.: 3:16-cv-2904-WQH-BLM<br><br>**ORDER: (1) DENYING MOTION FOR LEAVE TO FILE SUPPLMENTAL COMPLAINT AS MOOT; (2) DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF FAC; AND (3) DENYING MOTION TO NOTIFY DIRECTOR'S OFFICE**<br><br>**[ECF Doc. Nos. 20, 21, 23]** |

HAYES, Judge:

**I.    Procedural History**

    Antoine L. Ardds ("Plaintiff"), currently incarcerated at the California Health Care Facility, located in Stockton, California, and proceeding pro se, initially filed a document entitled "Coloring Agreement" which the Court liberally construed to be an attempt to file a civil rights complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1). Plaintiff also filed a Motion for Preliminary Injunctive Relief (ECF No. 6), as well as certified copies of his inmate trust account statement, which the Court liberally construed as a Motion to

Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). (ECF Nos. 2, 15). In addition, Plaintiff filed a "Supplemental Complaint," along with a "Motion to Dismiss Improperly Named Defendant" and a Motion for Leave to File a Supplemental Complaint. (ECF Nos. 8, 10, 14.)

On February 28, 2017, this Court granted Plaintiff's Motion to Proceed IFP, denied his Motion for Preliminary Injunction, granted his Motion to Dismiss improperly named defendant and dismissed his Complaint for failing to state a claim upon which relief could be granted. (ECF No. 18.) On March 1, 2017, Plaintiff filed a Motion requesting leave to file a supplemental complaint. (ECF No. 20). However, on March 27, 2017, Plaintiff filed his First Amended Complaint ("FAC"). (ECF No. 21.) Therefore, his need to file a supplemental pleading is now moot.

Finally, Plaintiff has filed a document entitled "Ex Parte Motion" in which he is requesting that this Court "notify the Director's officer" regarding an alleged excessive force incident which occurred at his current place of confinement. (ECF No. 23.) The Court construes this as a request for injunctive relief.

## II. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A. Standard of Review

As the Court previously informed Plaintiff, because Plaintiff is a prisoner and is proceeding IFP, his FAC requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires that a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

### B. Plaintiff's Allegations

On August 19, 2016, Plaintiff was housed at the Richard J. Donovan Correctional Facility ("RJD"). (*See* FAC at 7.) At the time Plaintiff arrived at RJD, he had "pending disciplinary actions and appeals" from his previous place of incarceration, Salinas Valley State Prison ("SVSP"). (*Id.*) Specifically, Plaintiff was suing a correctional officer at SVSP, D. Lopez, who is not a defendant in this action. (*Id.*) Plaintiff claims D. Lopez sent emails and made phone calls to RJD prison officials which he claims "prompt[ed] sudden harassment from RJD officials in such a short period of time." (*Id.*)

Plaintiff was given priority to visit the prison law library on October 24, 2016. (*Id.*) Plaintiff went to the designated waiting area to be escorted to the law library. (*Id.* at 8.) Plaintiff showed Defendant Hodge his pass for the law library. (*Id.*) However, as

Plaintiff began to walk to the law library, he alleges Correction Officer D. Jones[1] "began to make threats of sending killas" to Plaintiff's cell. (*Id.*) Plaintiff alleges that Jones "kept dashing out insults" which caused Plaintiff to walk back to his unit instead of attending the law library. (*Id.*)

Plaintiff alleges that Defendant D. Hodge used the information on his Plaintiff's to "go into the computer and look up Plaintiff's conviction." (*Id.*) Plaintiff further alleges that Hodge informed other correctional officers about the nature of Plaintiff's conviction which caused "intentional harassments." (*Id.*) After Plaintiff returned to his cell, he informed Correctional Officer Rucker[2] "about the incidents with Defendant D. Hodge and Officer D. Jones." (*Id.*) Plaintiff asked to speak with his psychologist due to "feeling depressed and paranoid." (*Id.* at 9.) Correctional Officer Rucker reissued a pass for Plaintiff to return to the law library. (*Id.*)

Plaintiff then approached Defendant Romero to give him his pass for the law library. (*Id.*) Plaintiff claims Romero took Plaintiff's pass and "tore it up." (*Id.*) Romero told Plaintiff to return to his unit. (*Id.*) Plaintiff did return to his unit and informed Correctional Officer Rucker of what had transpired with Romero. (*Id.*) Plaintiff again sought leave to meet with his psychologist. (*Id.*) However, Correctional Officer Rucker informed Plaintiff that he would have to wait until his scheduled time later that day because there was insufficient staff to escort him to his psychologist. (*Id.*)

Later that afternoon, Plaintiff was again released to go to the prison law library. (*Id.*) He was being "searched by officers in the search line" when he claims that Hodge began to "yell out bits and pieces of commitment offense and prior convictions." (*Id.* at 9-10.) Hodge allegedly said in the presence of other inmates and staff, "you're in here

---

[1] Correctional Officer Jones is not a named defendant in this action. (*See* FAC at 8.) Instead, Plaintiff claims that he is mentioned "in favor of proof of arguments in the events that occurred" and the "[d]ispute was handled with grace." *Id.*

[2] Correctional Officer Rucker is not a named defendant.

for 'rape' now, but what about 20 years ago?." (*Id.* at 10.) Plaintiff claims that Hodge and Romero "once again refused to let Plaintiff walk through the yard gate for the law library" and instead, Plaintiff walked to the "E.O.P. Mental Health Building" for a "drop in visit with his psychiatrist." (*Id.*) Plaintiff told his psychiatrist of the harassment by Hodge and Romero. (*Id.*)

Seven days later, on October 31, 2016, Plaintiff attended a counseling session in which he informed his correctional counselor that he "needed to cut his session short, due to law library appointments." (*Id.*) He informed Correctional Counselor Lee of the incidents with Hodge and Romero in the past and was issued a new pass to attend the law library. (*Id.* at 11.) Plaintiff then showed Romero his pass to the law library and claims that Romero again "snatched and tossed" the pass into his pocket. (*Id.*) Romero "instructed Plaintiff to return back to his unit" and Plaintiff asked Romero "why are you still harassing me?" (*Id.*) Plaintiff claims Romero responded by telling him that "if you don't like it" file a grievance or "sue the Warden." (*Id.*)

Plaintiff went to see his psychologist to "inform" him of the "harassments and intimidate[ing] actions" of Romero and Hodge. (*Id.*) Plaintiff was "instructed to wait for an escort" and spoke to "Captain or Lieutenant Poladion"[3] about the events with Romero and Hodge. (*Id.*)

On November 7, 2016, Plaintiff "informed unit officers" of his priority pass to the law library. (*Id.* at 12.) The unit officers called Defendant Valdovinos to escort Plaintiff to the law library but Valdovinos told the unit officers that the law library was "closed due to it being searched." (*Id.*) However, Plaintiff claims this was not true and the law library was open. (*Id.*) Plaintiff alleges that he has been "red flagged" because of his "criminal history." (*Id.*)

Plaintiff claims that he brought his complaints to Defendants McGee, Smith,

---

[3] Captain Poladion is not a named defendant in this action.

Gardinez, as well as Sergeant Kane and Wilbourn.[4] (*Id.*) Plaintiff wrote letters to Defendant Paramo, Warden for RJD, regarding his complaints of staff misconduct. (*Id.* at 13.) Plaintiff claims he received a response on December 19, 2016 and February 21, 2017 "acknowledging Plaintiff's staff misconduct complaints against the defendants and their supervisors." (*Id.*)

Defendants Baramonte, Smith, McGee, and Gardinez were informed of Plaintiff's complaint through the administrative grievance process. (*Id.*) However, Plaintiff alleges that these Defendants ignored Plaintiff's complaints. (*Id.*) Plaintiff further claims that he was only housed at RJD for 100 days and therefore, these acts taken by Defendants "could be in retaliation for the civil actions" filed by Plaintiff against SVSP officials. (*Id.*) Plaintiff maintains that Defendants are part of a "tight knit social group" that refer to themselves as the "C Facility 'Green Wall'" which Plaintiff claims is a "correctional officers prison gang." (*Id.* at 14.)

On December 5, 2016, Plaintiff was returning from a "mental health treatment group" when he was "summoned" by a "unit clerk" to observe the "misuse of force by defendants G. Valdovinos and L. Romero upon inmate Hance." (*Id.* at 15.) Plaintiff claims he observed Valdovinos and Romero "snatch and drag" this inmate and "slam" him into a security door. (*Id.*) Plaintiff alleges Hance later came to him to request his assistance as Hance claimed he was being sent to administrative segregation ("Ad-Seg") as a "cover up" for the alleged excessive use of force. (*Id.* at 16.) Plaintiff informed Hance that he would help him "document further harassments" from Valdovinos and Romero. (*Id.*) Later that morning, as Plaintiff and Hance were walking, he claims that Defendant Valdovinos "yelled out that inmate J. Hance was a child molester" in the presence of other inmates. (*Id.*)

Plaintiff claims Valdovinos later retaliated against him for assisting Hance by

---

[4] Sergeants Kane and Wilbourn are not named defendants in this action.

denying Plaintiff's right to participate in his religious services on December 2, 2016. (*Id.* at 18.) Plaintiff showed Valdovinos his pass but claims Valdovinos "snatched it," then "tore it up" and instructed Plaintiff to return to his cell. (*Id.*) Plaintiff further claims that Valdovinos from December 17, 2016 to January 3, 2017 began to "threaten and harass Plaintiff during his morning retrieval of his kosher meals." (*Id.*) When Plaintiff objected, he claims Valdovinos told him that he could file a grievance but Valdovinos would prevail because he had "Lieutenants and Sergeants that will find [Plaintiff] guilty." (*Id.* at 19.)

On December 17, 2016, Plaintiff claims that in retaliation for informing prison officials of the alleged misconduct of Valdovinos, Romero, and Hodge, these Defendants used Plaintiff's cell mate as an "instrument of attack to harm Plaintiff." (*Id.*) Plaintiff alleges his cellmate "attempted to carry out an assault under the influence of speed or heroin." (*Id.* at 20.) However, Plaintiff claims it was a "failed attempt." (*Id.*) Correctional Officer Gomez responded to the altercation but was allegedly told by Defendants Smith, McGee, and Gardinez "not to document the incident" so that they could continue to "place abusive and assaultive inmates into his cell." (*Id.*)

Plaintiff was given a pass to participate in his "Mental Health Treatment group" on January 10, 2017 but was told by Romero to "get off my [expletive] dirt." (*Id.*) Plaintiff claims he "did not engage in the negative outburst of playground behavior." (*Id.* at 21.) As Plaintiff began to walk to his unit, Romero allegedly yelled out "Ardds is a rat and snitch, his friends are the Judge and D.A.'s office." (*Id.*) Plaintiff also claims Romero told other inmates "if I catch any inmate speaking with [Plaintiff], I will personal come into your house ("cell") and destroy your property." (*Id.*) Plaintiff claims this caused him to have suicidal thoughts about "returning back to his cell [to] take a razor and cut his neck." (*Id.*)

Plaintiff's cell mate was able to help him "calm down" and attend his mental health group. (*Id.*) Plaintiff told his psychologist of his claims and she informed him that

7

he could wait until an EOP[5] Sergeant could come to escort him to his cell. (*Id.* at 22.) However, Reteria and Romero escorted him and Plaintiff claims he was "pushed up against the wall and hand cuffed." (*Id.*) While Plaintiff had been attending his group session, he alleges Reteria had "gone through" his legal folders in his cell and "destroyed" his documents. (*Id.*) Gardinez later told Defendants to "release Plaintiff back to his unit and give him back all of his property items." (*Id.* at 23.) However, Plaintiff claims Reteria and Romero destroyed all of his legal papers and "refused to give Plaintiff his identification card." (*Id.*)

Plaintiff made another suicide attempt by using a razor to "slice and cut his neck." (*Id.*) Plaintiff was transported to an outside hospital and claims that Romero was one of the escorting officer to "intentionally intimidate him" to not report the "previous events to mental health staff." (*Id.* at 24.) Romero told him "not to return to 'C' facility if he knows what's good for him." (*Id.*) Plaintiff was later "transferred into RJD's Mental Health crisis bed" and then transferred on February 7, 2017 to the California Health Care Facility in Stockton, California. (*Id.* at 25.)

### C. 42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

---

[5] Enhanced Out Patient

Here, the Court finds Plaintiff's FAC contains factual content sufficient to survive the "low threshold" for proceeding past the sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012); *Iqbal*, 556 U.S. at 678. Accordingly, the Court will direct the U.S. Marshal to effect service upon the Defendants on Plaintiff's behalf. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); FED. R. CIV. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

### D. Exhaustion

While the Court has found that Plaintiff has alleged facts sufficient to survive the sua sponte screening process, the Court must caution Plaintiff that this action may ultimately be dismissed for failing to properly exhaust his administrative remedies before bringing this action. A majority of Plaintiff's claims are alleged to have arisen from events that occurred just a few days to weeks before he filed his initial Complaint and some of the claims are alleged to have arisen after he filed his initial Complaint.

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statutory exhaustion requirement applies to all inmate suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'[ ]-rules that are defined not

by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88); *see also Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting *Jones*, 549 U.S. at 218). The Ninth Circuit has consistently held, however, "that the PLRA requires only that a prisoner exhaust available remedies, and that a failure to exhaust a remedy that is effectively unavailable does not bar a claim from being heard in federal court." *McBride v. Lopez*, 807 F.3d 982, 986 (9th Cir. 2015); *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010); *Albino v. Baca*, 747 F.3d 1162, 1177 (9th Cir. 2014) (en banc), *cert. denied sub nom. Scott v. Albino*, 135 S. Ct. 403 (2014)). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Albino*, 747 F.3d at 1171.

Because the failure to exhaust is an affirmative defense, Defendants bear the burden of raising it and proving its absence. *Jones*, 549 U.S. at 216; *Albino*, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Albino*, 747 F.3d at 1166. Otherwise, Defendants must produce evidence proving the Plaintiff's failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable Plaintiff, shows he failed to exhaust. *Id.*

### III. Motion for Preliminary Injunction

Plaintiff has also filed an "Ex Parte Motion to Notify the Director's Office" which the Court has construed as a motion for preliminary injunctive relief. (ECF No. 23.) In this Motion, Plaintiff alleges that he has been subjected to excessive force while incarcerated at the California Health Care Facility in Stockton, California. (*Id.* at 1.) He also claims that he is being denied mental health care services at this facility. (*Id.* at 2.)

Pursuant to FED. R. CIV. P. 65(a), "[t]he Court may issue a preliminary injunction only on notice to the adverse party," and it may issue a TRO without written or oral notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the

adverse party can be heard in opposition." FED. R. CIV. P. 65 (b)(1)(A).

A federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend."). The court may not attempt to determine the rights of persons not before it. *See, e.g.*, *Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 234-35 (1916); *Zepeda v. INS*, 753 F.2d 719, 727-28 (9th Cir. 1983). Pursuant to Federal Rule of Civil Procedure 65(d)(2), an injunction binds only "the parties," their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation." FED. R. CIV. P. 65(d)(2)(A)-(C).

In this matter, Plaintiff's claims are against RJD officials and the claims Plaintiff raises in this motion are against individuals at his current place of incarceration and not the Defendants currently before this Court. Therefore, the Court cannot grant Plaintiff injunctive relief because it has no personal jurisdiction over the persons he seeks to enjoin. *See* FED. R. CIV. P. 65(a)(1), (d)(2); *Murphy Bros., Inc.*, 526 U.S. at 350; *Zepeda*, 753 F.2d at 727-28.

## VI. Conclusion and Order

For all the reasons explained the Court:

1. **DENIES** Plaintiff's Motion for Leave to File Supplemental Complaint as moot (ECF No. 20).

2. **DIRECTS** the Clerk to issue a summons as to Plaintiff's FAC (ECF No. 21) and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for each named Defendant. In addition, the Clerk will provide Plaintiff with a certified copy of the February 28, 2016 Order granting Plaintiff's Motion to Proceed IFP, a certified copy of his FAC and the summons so that he may serve the Defendants. Upon receipt of this "IFP Package," Plaintiff must complete the U.S. Marshal Form 285s as completely and

11

accurately as possible, and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

    3. **ORDERS** the U.S. Marshal to serve a copy of the FAC and summons upon the named Defendants as directed by Plaintiff on the U.S. Marshall Form 285s provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); FED. R. CIV. P. 4(c)(3).

    4. **ORDERS** the served Defendants to reply to Plaintiff's FAC within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," the defendant is required to respond); and

    5. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon the named Defendants, or, if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to FED. R. CIV. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document was served on Defendants or their counsel, and the date of that service. *See* S.D. CAL. CIVLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon Defendants may be disregarded.

///
///
///

**IT IS FURTHER ORDERED that**

6. Plaintiff's Ex Parte Motion to Notify Director's Office (ECF No. 23) is **DENIED** without prejudice.

Dated: May 4, 2017

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court